IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JOHN MACEIRA-LOPEZ,

   PLAINTIFF,

   v.

DORAL FINANCIAL CORPORATION, et al.,

   DEFENDANTS.

Civil No. 11-1841 (GAG)

**OPINION AND ORDER**

Plaintiff John Maceira-Lopez ("Plaintiff") filed a complaint against Doral Financial Corporation and unnamed insurance companies ("Doral" or "Defendants") seeking relief under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"). The Complaint also seeks relief under state law for alleged breach of fiduciary duties, breach of the duty of good faith, malicious prosecution and violating Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. LAWS ANN. tit. 31 § 5141. On October 24, 2011, Doral filed a Motion to Dismiss. (Docket No. 10.). The court granted in part and denied the same in part. (Docket No. 20.) Particularly, the court granted Defendants' motion to dismiss as to co-plaintiff Mrs. Lopez-Rios, Plaintiff's mother, because she is not the borrower and therefore could not have a claim under RESPA. The court also denied Plaintiff's request to stay all state court foreclosure proceedings under the Rooker-Feldman doctrine. However, Defendants' motion to dismiss was denied without prejudice as to Plaintiff's RESPA and state law claims. (Docket No. 20.) The court ordered Plaintiff to file an amended complaint. (Docket No. 20.) Plaintiff filed the amended complaint on January 28, 2012. (Docket No. 23.)

Presently before the court is Defendants' Motion to Dismiss the amended Complaint. (Docket No. 27). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on grounds that Plaintiff failed to provide sufficient pertinent facts to support his claim under RESPA.

**Civil No. 11-1841 (GAG)**                                    2

Plaintiff opposed the motion and Defendants replied (Docket Nos. 32 and 35). After reviewing these submissions and the pertinent law, the court **GRANTS** Defendants' motion to dismiss. (Docket No. 27).

I.  **Legal Standard**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678-79 (quoting Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

II. **Factual and Procedural Background**

In March 2002, Plaintiff acquired residential property in Carolina, Puerto Rico. The property was originally acquired through a federally related mortgage loan approved by the Federal Housing Administration ("FHA"). The original mortgage note, assumed by the previous owners, was for the principal sum of $120,655.00 at the fixed interest rate of 7.5%, and called for fixed

**Civil No. 11-1841 (GAG)**                            3

monthly payments of $843.64 until the maturity date of November 1, 2027. The Federal Truth in Lending Disclosure Statement provided to Plaintiff on March 14, 2002, stated that his future mortgage payment schedule would consist of 308 monthly payments of $843.39, beginning on May 1, 2002, and one payment of $844.11 due on January 1, 2028. Since 2002, Doral has been the loan servicer for Plaintiff's federally related mortgage loan.

Plaintiff alleges that in 2003 he suffered a work-related accident that left him temporarily paralyzed in his extremities. As a result, Plaintiff's earnings were affected and the payment of his mortgage was also affected. In order to put his mortgage loan account up to date, Plaintiff was advised by Doral to assume the obligation of an FHA subordinate note, which he did on or around January 17, 2003, for the principal sum of $6,526.73. According to Plaintiff, after bringing the account up to date, his health began to deteriorate and, as a result, his mortgage loan debt began to accumulate again. In June 2004, Plaintiff allegedly submitted a payment for what he believed he owed at that time; however, Doral returned Plaintiff's check in July 2004, claiming that the amount submitted did not cover the totality of the outstanding debt.

In September 2005, Doral commenced a collection action and foreclosure proceeding on Plaintiff's property in Puerto Rico's Court of First Instance, Carolina Superior Court, in civil case no. FCD2005-1893, <u>Doral Fin. Corp. v. Maceira-Lopez</u>. According to the amended Complaint, the parties stipulated to a settlement in which both acknowledged the following: the existence of a debt; that Plaintiff agreed to pay Doral a certain amount of money; that in light of the foregoing, Doral agreed to give Plaintiff a couple of months to obtain the money owed, bypassing any intent to foreclose on the property; that the sums paid would put his loan account current, and; that Doral agreed to send Plaintiff a reinstatement letter and the mortgage payment book, and would move to correct his adverse credit report. In turn, Plaintiff would then begin to make his mortgage payments. (<u>See</u> Docket No. 23 at 20 and Docket No. 32, ¶ 7.)

According to Plaintiff, the foregoing agreements were expressed to Carolina Superior Court Judge Luisa Lebrón, who, although entering summary judgment on August 17, 2007, expressly

**Civil No. 11-1841 (GAG)**                                    4

stated that execution of the judgment would be stayed for four months to allow Plaintiff to fulfill his obligations under the stipulated agreement. (See Docket No. 23, ¶ 22.)

Plaintiff states that the four months granted by the local court to pay the agreed upon amount turned into almost seven months. In or around March 2008, Plaintiff proceeded to deposit the agreed amount of $51,540.51 with the Accounts Unit of the Carolina Superior Court. (See Docket No. 23, ¶ 24.) According to Plaintiff, he was made to believe by Doral and/or Doral's representatives that these payments covered, among other things, the full satisfaction of the FHA subordinate note of $6,526.73. (See Docket No. 23, ¶ 25.) In or around July 2008, Doral, through its attorneys, accepted the checks for $51,540.51 as payment to put the account up to date.

Plaintiff alleges that, although he complied with his side of the agreement, Doral did not. (See Docket No. 23, ¶ 26.) Supposedly, Doral did not send him the reinstatement letter of his federally related mortgage loan, or his mortgage payment coupon book, and it failed to correct his adverse credit report. Plaintiff sent Doral Qualified Written Requests ("QWRs") on September 18 and 24, October 7, and November 3 and 14, of 2008.[1] (See Docket No. 23, ¶ 29.) According to Plaintiff's amended complaint, these written communications constituted a QWR under RESPA because they stated his full name, identified his mortgage loan account number with its FHA classification, and included a clear statement of the reasons why he believed his account was in error, which included Doral's failure to provide him with the reinstatement letter, his mortgage payment coupon book, and the apparent overcharging on his monthly mortgage payments since 2003. (See Docket No. 23, ¶ 30.)

Plaintiff contends that Doral did not respond to or clarify his written or verbal inquiries, in clear violation of RESPA's requirements. (See Docket No. 23, ¶ 37.) Allegedly, Plaintiff never

---

[1] A QWR under RESPA is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. 2605(e)(1)(B).

**Civil No. 11-1841 (GAG)**                                5

received a written response acknowledging receipt of his QWRs, as mandated by 12 U.S.C. § 2605(e)(1)(A). In or around March 2009, Doral attempted to foreclose on Plaintiff's property as part of the proceedings. Plaintiff alleges emotional and physical damages as a result of Doral's foreclosure procedures. (See Docket No. 23, ¶ 38.)

On the other hand, Doral argues that Plaintiff's "appreciation of the obligations allegedly agreed to between the parties in the foreclosure case distances itself from reality." (See Docket No. 35, ¶ 12.) It further states that "the Amended Complaint includes elements of an agreement which are false or nonexistent." (See Docket No. 35, ¶ 17.) Doral submits a translation of the Joint Motion in Compliance reached in the foreclosure case, which the Court of First Instance granted, and to which Plaintiff did not oppose.[2] (See Docket No. 35-1.) According to the motion, Doral accepted $51,540.51 from Plaintiff as payment to bring the account, which was being foreclosed on, current as of May 31, 2008. The motion also states that Plaintiff accepted and recognized that he was obligated to continue making the corresponding payments to the mortgage loan, according to the terms of the Mortgage Note and Mortgage Deed and that Doral's acceptance of the amount consigned did not have a novation effect regarding any of the terms of said Mortgage Note and said Mortgage Deed.

Thus, Doral contends that Plaintiff's amended complaint should be dismissed because the allegations are not only insufficient but are simply false, and as a result they should not be considered by the court.

### A.    Motion to Dismiss v. Summary Judgment

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson

---

[2] Doral submitted the Joint Motion in Compliance with Order to the court as an exhibit to the Reply to Response in Opposition to Motion to Dismiss the Amended Complaint. The court will consider it because it is a document with unquestioned authenticity that is relied upon by Plaintiff as part of the allegations of the amended complaint. See Beddall v. State St. Bank & Trust Co., 137 F. 3d 12 (1st Cir. 1998) (citing Fudge v. Penthouse, Int'l, Ltd., 840 F. 2d 1012, 1015 (1st Cir. 1988)).

**Civil No. 11-1841 (GAG)**                                6

v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). However, there is "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the Plaintiff's claim; or for documents sufficiently referred to in the complaint.'" Alt. Energy, Inc., 267 F.3d at 33 (quoting Watterson, 987 F.2d at 3). Where a document with unquestioned authenticity is relied upon as part of the allegations of the Complaint (and the amended Complaint), it is certainly within this court's authority to admit and consider the document in its decision on the Rule 12(b)(6) motion before it. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998), citing Fudge v. Penthouse, Int'l. Ltd., 840 F. 2d 1012, 1015 (1st Cir. 1988).

Indeed, when addressing a motion to dismiss, the court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint." See Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000). The rationale for this principle is that "the main problem of looking to documents outside the complaint-lack of notice to plaintiff-is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Id. (internal citation omitted).

Plaintiff refers to the "Joint Motion in Compliance with Order" filed before the Court of First Instance as part of the foreclosure proceedings both in the complaint and the amended complaint. Therefore, the court will consider the agreement reached by both parties in the foreclosure case, which the Court of First Instance granted, and to which Plaintiff did not articulate any opposition, without converting the motion to dismiss into a motion for summary judgment. See Barber v. Verizon New England, Inc., 2005 WL 3479834, *1 n.1 (D.R.I. Dec. 20, 2005).

**III.    Discussion**

    **A.    Federal Claims**

Doral contends that the amended complaint should be dismissed because it does not aver facts that connect Doral's alleged failures to respond to Plaintiff's QWRs with Plaintiff's mortgage

**Civil No. 11-1841 (GAG)**                                    7

payment failures, the ongoing foreclosure proceedings, or with Plaintiff's fears of losing his home.[3] (See Docket No. 27 at 3.)  In addition, Doral contends that the amended complaint should be dismissed because, not only are Plaintiff's allegations insufficient, but also false. (See Docket No. 35, ¶ 18.)

RESPA authorizes recovery for "any actual damages to the borrower as a result of the failure [to comply with the statute]."  12 U.S.C. § 2605 (f)(1)(A); see also Houston v. U.S. Bank Home Mortg. Wisconsin Servicing, 2011 U.S. Dist. LEXIS 118862, *12 (E.D. Mich. Oct. 14, 2011). "Thus, a plaintiff asserting a RESPA violation must show that the losses alleged are causally related to the violation."  Id.  In the case at bar, there is nothing in Plaintiff's allegations that suggests that the damages he suffered resulted from Doral's alleged RESPA violation.  Plaintiff claims he suffered damages as a result of Doral's "malicious and unwarranted foreclosure action in the local courts" and that he suffered grave emotional and physical distress after finding out his home was being foreclosed.  (See Docket No. 23, ¶¶ 37-38.)

Plaintiff does not allege sufficient facts in the amended Complaint that may show that the foreclosure occurred as a result of Doral's alleged RESPA violation.  Plaintiff makes conclusive allegations stating that, by not responding to his QWRs, Doral did not put him in a position to continue making his monthly payments. Furthermore, Plaintiff states that "[t]he alleged non-payment of his mortgage loan was due exclusively to Doral's inability to abide by its previous agreement, which was later compounded by Doral's failure to respond to Plaintiff's QWRs."  (See Docket No. 32 at 10.)

The court finds that Plaintiff's allegations are in total disregard of the agreements to which

---

[3] In addition, Doral contends that the amended complaint should be dismissed because Plaintiff has not pled sufficient facts to establish that the letters and emails he allegedly sent Doral could be considered QWRs under RESPA. To obtain jurisdiction under RESPA, and for the duty to respond to arise, a servicer must have received communications that constitute QWRs. Doral argues that Plaintiff fails to establish, in the Complaint and amended Complaint, how the letters and e-mails he sent contained a sufficiently detailed statement as to his reasons for thinking that his account was in error or how the communications related specifically to the servicing of the loan. Doral argues that Plaintiff simply alleges conclusively that his written inquiries constituted QWRs. The court will not consider this argument at this point because it has determined that the amended Complaint does not survive Rule 12(b)(6).

**Civil No. 11-1841 (GAG)** 8

the parties stipulated in the Joint Motion in Compliance with Order in the foreclosure case in 2008. (See Docket No. 35-1.) Plaintiff agreed to pay $51,540.51 to bring the account current as of May 31, 2008, an account which was approximately five years in arrears. Plaintiff agreed to continue making the corresponding payments to the mortgage loan, in accordance with the terms of the Mortgage Note and Mortgage Deed, and that the acceptance of the amount consigned did not have a novation effect in regard to any of the terms of said Mortgage Note and said Mortgage Deed. Although the terms of the stipulation are clear, Plaintiff insists that Doral did not comply with a different set of agreements that were not part of the aforementioned motion.

Plaintiff alleges that he sent several QWRs four months after he complied with the agreement, inquiring about elements that were not part of the stipulation between the parties, and to inquire how the amount of $51,540.51 he paid Doral was distributed. However, knowledge of how payment was distributed by the Bank should not have an affect on Plaintiff's ability to continue to make mortgage payments in accordance with the stipulation. See Lee v. Equifirst Corp., 2010 U.S. Dist. LEXIS 114396, at *9 (M.D. Tenn. Oct. 26, 2010) (unpublished) ("It is clear that the foreclosure was caused by the plaintiff's inability to pay the amount she owed; knowledge of why certain payments were applied in certain ways [the information she sought in her unanswered QWRs request] had no effect on the her ability to make loan payments.") See also Lawther v. Onewest Bank, No. 10-0054, 2010 U.S. Dist Lexis 131090, at *7 (N.D. Cal. Nov. 30, 2010) (finding no evidence showing "how the QWR failure itself is casually connected to the claimed distress of Lawther or his family"). Plaintiff makes no mention in the allegations in the amended Complaint of whether or not he continued to make mortgage payments after he brought the account current.

The court notes that the importance of establishing a causal connection between the alleged damages suffered and the RESPA violation lies in the fact that, although RESPA is a consumer protection statute, its purpose is not to protect borrowers who do not make mortgage payments against lawful foreclosures. For Plaintiff to survive a 12(b)(6) motion under RESPA, he had to allege sufficient facts that connected Doral's alleged failure to respond to Plaintiff's QWRs to the supposed emotional damages suffered as a result of the foreclosure. Plaintiff failed to do so.

**Civil No. 11-1841 (GAG)**                              9

Because Plaintiff's allegations in the amended complaint fail to show a causal connection between Doral's alleged RESPA violation and Plaintiff's claimed damages, the court **GRANTS** Doral's motion to dismiss. See generally U.S. v. Zannino, 895 F.2d 1 (1st Cir. 1990).

### B.  Puerto Rico Claims

Plaintiff invokes the supplemental jurisdiction of the court to adjudicate his claims under state law for alleged breach of fiduciary duties and breach of the duty of good faith. Plaintiff also seeks redress pursuant to Article 1802 "[f]or his emotional distress because of the possibility that he and Lydia Lopez-Rios could be 'left out of their home' and for malicious prosecution arising from the foreclosure proceeding at the Puerto Rico Court of First Instance." (See Docket No. 27 at 16.)

#### 1.  **Agency Claim and Breach of Duty of Good Faith Claim**

Doral alleges that Plaintiff did not state sufficient facts to sustain an agency claim or breach of good faith claim. (See Docket No. 27 at 9.) Plaintiff makes conclusory allegations of the nature or source of the contractual relationship between the parties by which Doral allegedly owed Plaintiff a duty of good faith and he fails to allege how that relationship was breached. (See Docket No. 27 at 9). Therefore, Plaintiff's agency claim and breach of good faith claim are hereby **DISMISSED**.

#### 2.  **Article 1802 and Malicious Prosecution**

The Supreme Court of Puerto Rico has "frequently reiterated the doctrine that in our jurisdiction the per se civil damage suit resulting from a civil action does not exist." Jiménez-Alvarez v. Silén-Maldonado, 131 D.P.R. 91, 96 (P.R. 1992), 131 P.R. Dec. 91, 96 (1992). The court stated,

> As an exception, however, we have recognized the action for damages for malicious prosecution when the facts of the case show extreme circumstances in which plaintiff is harassed with unjustified actions maliciously instituted. The following requisites must be present in order to successfully file an action of this nature: (1) a civil action was instituted (2) maliciously and without probable cause, (3) the case ended favorably for the plaintiff (defendant in the initial civil action) and (4) the plaintiff alleging malicious prosecution sustained damages thereby.

Id. at 96. Doral argues that Plaintiff fails to meet the second and fourth prongs of the Silén-Maldonado test because the foreclosure proceeding was not instituted in bad faith (and Plaintiff can

**Civil No. 11-1841 (GAG)**                                             10

not plead otherwise). Doral, not Plaintiff, prevailed in that action. (See Docket No. 27 at 16.) Furthermore, Doral contends that the amended Complaint, just as in the original Complaint, does not have any facts which, even if taken as true, sustain Plaintiff's malicious prosecution cause of action. (See Docket No. 27 at 16.) The court agrees.

Doral also alleges that Plaintiff's Article 1802 claim is time-barred. It is well-settled law in Puerto Rico that the one-year period of limitations of actions under Article 1802 begins to run as soon as the injured party knows or should reasonably know of the harm and of the likely identity of the tortfeasor. See Tokyo Marine & Fire Ins. Co., Ltd., v. Pérez & Cía. de Puerto Rico, Inc., 142 F. 3d 1, 3 (1st Cir. 1998); see also Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). Plaintiff allegedly suffered emotional damages as a result of Doral's purported failure to reply to his QWRs. Plaintiff allegedly sent Doral QWRs from September to November of 2008 and he was well aware of Doral's alleged failure to respond since November 2008. "[T]herefore, according to Maceira's own admissions, the period of limitations of his second cause of action began to run either on September 2008 or November 2008." (See Docket No. 27 at 14.) At the time of the filing of the original Complaint, September 1, 2011, Plaintiff's cause of action under Article 1802 had long expired.

**IV.   Conclusion**

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss. (Docket No. 27.)

**SO ORDERED.**

In San Juan, Puerto Rico this 29th day of November, 2012.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge